**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JAMES COURTNEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-1062-SMY** |
| | ) | |
| **S.A. GODINEZ,** | ) | |
| **KIM BUTLER,** | ) | |
| **LASHBROOK, and** | ) | |
| **RICHARD HARRINGTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**YANDLE, District Judge:**

Plaintiff James Courtney, previously incarcerated at Menard Correctional Center ("Menard"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that the defendants violated his state and federal constitutional rights of due process, equal protection and freedom from cruel and unusual punishment by incarcerating him beyond the date he was eligible for mandatory supervised release ("MSR"). Plaintiff is no longer incarcerated. Therefore, this Court will conduct a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), which provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal –
>
> > i.   is frivolous or malicious;
> >
> > ii.  fails to state a claim on which relief may be granted; or
> >
> > iii. seeks monetary relief against a defendant who is immune from such relief.

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

In the Complaint (Doc. 1), Plaintiff alleges that 6 months prior to his projected release date, he submitted a request to Field Services seeking approval of the residence of Faye Milburn or placement in a halfway house at a specified address in East St. Louis upon his release. (Doc. 1, p. 7). Plaintiff alleges that, despite these requests, on October 7, 2013, he was told that he was "violated" and he would not be allowed to leave on MSR. *Id.* Plaintiff claims he immediately

wrote to Defendants Godinez, Harrington and Butler complaining of his illegal incarceration and demanding he be released on MSR. *Id.* Plaintiff also claims that he found out later that other prisoners, who became eligible for MSR after Plaintiff, were sent to halfway houses before Plaintiff. He wrote Godinez, Harrington and Butler to complain about this practice as well. *Id.* Plaintiff allegedly received no response to his complaints. *Id.*

Plaintiff alleges that he was discriminated against by each of the defendants due to "what [he is] labeled." *Id.* To support this contention, Plaintiff indicates that the Illinois Department of Corrections ("IDOC") and its employees could have sent him to another halfway house or Ms. Milburn's house, but they chose not to do so. *Id.* He contends that the aforementioned facts constitute a violation of the Fifth Amendment Due Process Clause,[1] the Eighth Amendment prohibition against cruel and unusual punishment and the Fourteenth Amendment Equal Protection Clause of the United States Constitution. (Doc. 1, p. 8). Plaintiff also claims that his rights under the Illinois Constitution and the Universal Declaration of Human Rights have been violated. (Doc. 1, pp. 8-9). He seeks monetary damages. (Doc. 1, p. 10).

### Discussion

In order for Plaintiff to proceed with his case, his Complaint must suggest that one or more of the defendants violated his constitutional rights. The Complaint fails to meet this threshold. Three possible constitutional claims are suggested by Plaintiff's allegations in light of the relevant case law:

**Count 1** – Defendants subjected Plaintiff to cruel and unusual punishment contrary to the Eighth Amendment by failing to release him on his expected MSR date;

---

[1] Because the Fifth Amendment Due Process Clause applies to deprivations of liberty by the federal government, and Plaintiff's claims in this case are related to deprivations of liberty by the state of Illinois, Plaintiff's due process claims will be construed as if he sought protection of his due process rights under the Fourteenth Amendment. U.S. CONST. AMENDS. V, XIV.

**Count 2** – Defendants deprived Plaintiff of a liberty interest without due process, in violation of the Fourteenth Amendment, when they failed to release him on his expected MSR date; and

**Count 3** – Defendants violated Plaintiff's Fourteenth Amendment Equal Protection rights by releasing prisoners with later MSR eligibility dates to halfway houses before releasing Plaintiff.

## <u>Count 1 – Eighth Amendment</u>

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment encompasses claims that prison officials, acting with deliberate indifference, held an inmate beyond the term of his incarceration without penological justification. *See Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)).

Claims under the Eighth Amendment have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991). The objective conditions must have resulted in an unquestioned and serious deprivation of a constitutional right. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

The subjective component of unconstitutional punishment focuses on the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In order to satisfy this second requirement, a plaintiff must show that a defendant was deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994). In other words, the prison official must have acted or failed to act despite the official's knowledge that his course of action (or inaction) could result in a violation of the prisoner's constitutional rights.

*Farmer*, 511 U.S. at 842.  "Deliberate indifference requires more than negligence, rather the defendant 'must meet essentially a criminal recklessness standard, that is, ignoring a known risk.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013)) (other internal quotation and citation omitted).

As to the objective component of his claim, Plaintiff does not explicitly state his projected MSR date.  He does, however, state that he was told on October 7, 2013 that he was "violated" and was not allowed to leave prison, apparently until 365 days after his projected MSR date.  (Doc. 1, pp. 6-7, 10).  This indicates that Plaintiff was most likely "paroled" merely on paper and returned to prison, as was the case with the plaintiffs in *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. March 10, 2014).  These facts satisfy the objective Eighth Amendment element. The remaining question is whether any defendant was deliberately indifferent to the risk that Plaintiff's incarceration would be improperly extended.

An examination of the Complaint reveals nothing that would indicate unconstitutional deliberate indifference on the part of the defendants.  Plaintiff describes at least two times when he wrote to Godinez, Harrington and Butler notifying them that "they [were] illegally incarcerating [him]" by holding him past his MSR date despite the fact that he had submitted addresses to Field Services 6 months prior and that prisoners with later eligibility dates were placed in  halfway houses before him.  (Doc. 1, p. 7).  There is no suggestion in the Complaint that either potential address submitted by Plaintiff was suitable or approved by the relevant authority.  In fact, Plaintiff does not identify the relevant authority who was responsible for the decision to "violate him at the door."  He simply alleges that he wrote these defendants, two wardens of Menard (Butler and Harrington) and the Director of IDOC (Godinez), about his allegedly unlawful incarceration, without indicating whether they were personally involved in

perpetuating it.[2]

Based on the allegations, it is unclear where the fault may lie, and whether the failure to release Plaintiff was the result of negligence (which does not amount to deliberate indifference). It is possible that whoever's job it was to assist Plaintiff in obtaining an appropriate residence deliberately failed to take reasonable steps to obtain a halfway house spot for Plaintiff or get approval of Ms. Milburn's house.  However, construing all allegations liberally in favor of Plaintiff, the Complaint sets forth no factual allegations that might support this conclusion.  In the absence of such factual support, the Complaint fails to state an Eighth Amendment deliberate indifference claim against defendants upon which relief may be granted.  Count 1 shall therefore be dismissed.  Out of an abundance of caution, however, the dismissal shall be without prejudice.

### Count 2 – Due Process

In determining whether the defendants deprived Plaintiff of a liberty interest without due process when he was not released upon eligibility for MSR, the Court must first examine whether Plaintiff had a liberty interest protected by the Fourteenth Amendment.  A convicted prisoner has no constitutional right to be released from incarceration before the expiration of his sentence.  *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). While a state may create an expectation of parole that qualifies as a liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376 (1987); *Heidelberg v. Ill. Prisoner Review Bd.*, 163 F.3d 1025, 1026 (7th Cir. 1998), the Illinois Supreme Court does not view the Illinois parole/MSR scheme as creating a liberty interest.  *See generally Hill v. Walker*, 948 N.E.2d 601, 605-06 (Ill. 2011).  However, the Seventh Circuit has recognized that if an inmate has been placed on parole,

---

[2] Generally, a defendant's role in responding to a grievance filed over the misconduct of others does not give rise to liability in a civil rights case, nor is a prison warden subject to liability as a supervisor.  *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (the doctrine of respondeat superior is not applicable to § 1983 actions).

he has a liberty interest in retaining that status. *See Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 781 (7th Cir. 2008); *see also Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee . . . . the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.").

It appears that Plaintiff may have been paroled, if only as a formality, before he was "readmitted" to the prison, though the cause and whether this actually occurred is unclear based on the Complaint. Under the circumstances, Plaintiff may have had a protected liberty interest if he was indeed paroled. *See Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992, at *6 (N.D. Ill. March 10, 2014). He would have been deprived of that interest when he was not permitted to begin his parole/MSR on the scheduled date. Assuming the facts alleged show that Plaintiff indeed had a liberty interest, in order to maintain a constitutional claim for the loss of such a liberty interest, Plaintiff must also show that one or more defendants deprived him of his liberty without due process.

Due process is "not a static concept," but "requires government to follow 'reasonable procedures' in making its liberty determinations." *Murdock*, 2014 WL 916992, at *6 (quoting *Atkins v. City of Chicago*, 631 F.3d 823, 827 (7th Cir. 2011)). Illinois' statutory scheme governing parole release and revocation complies with constitutional requirements that a parolee be notified of a claimed parole violation and the evidentiary basis against him, be given an opportunity to be heard, to present a defense, to confront witnesses before a neutral hearing body and to receive a written statement of the parole revocation decision and the evidence supporting it. *Id.* at *6-7.

The Prisoner Review Board ("PRB") is vested with authority to conduct revocation

hearings, and IDOC has no authority to do so.  20 ILL. ADMIN. CODE § 1610.140; 730 ILL. COMP. STAT. 5/3-3-9(c); *Murdock*, at *7.  The PRB, however, has unilaterally decided to stop conducting hearings for sex offenders who were denied parole release due to the lack of an approved housing site, because these hearings were a "charade."  *Murdock*, at *8.  Therefore, sex offenders who are not released on parole on this basis do not receive the process described in the state statutes.  Nonetheless, the *Murdock* court determined that the "turnaround practice" did not violate the plaintiffs' due process rights.

As is true in the instant case, all defendants in *Murdock* were IDOC officials.  They could not be held responsible for the PRB's decision to stop conducting revocation proceedings for prospective sex-offender parolees, and as IDOC officials, they lacked authority to conduct such hearings.  Moreover, the chief administrative officer of each prison is bound to hold a prospective parolee in custody until an approved residence is found.  20 ILL. ADMIN CODE § 1610.110(a).  IDOC officials are therefore following the law when they decline to release an inmate who is eligible for parole but cannot satisfy this condition for his release.  *Murdock*, at *8-9.  The court observed:

> [I]t is true that the Plaintiffs had a right to release once the PRB issued a release order, but that right was subject to appropriate conditions being met.  The Plaintiffs did not satisfy a required condition, so the Defendants did not violate the Plaintiffs' right to release by complying with the State of Illinois's constitutional regulations preventing IDOC from releasing parolees without proper housing.

*Murdock*, at *9.

Finally, the *Murdock* court determined that the turnaround practice provides adequate notice to prisoners who face the prospect of continued incarceration despite their eligibility for parole.  *Id*. at *9-10 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989) (due process clause does not demand "perfect clarity and precise guidance")).  Prisoners are put on notice that

IDOC officials must approve their host site before they can be released, they are notified if their proposed host site location is not approved, and if they disagree with the disapproval, they may "challenge the determination or file a grievance." *Murdock*, at *10. As such, the court found that the *Murdock* plaintiffs were not deprived of a liberty interest without due process.

Plaintiff's circumstances appear similar to the *Murdock* plaintiff class, but the lack of facts articulated in the Complaint make it difficult to ascertain how similar. Each of the *Murdock* plaintiffs identified a parole site and obtained the PRB's approval of that site, but the IDOC defendants later found the site to be unsuitable. *Murdock*, No. 08-cv-1142 (N.D. Ill.) (Order certifying class, June 7, 2011, Doc. 137). Thus, they were led to believe that they had satisfied this condition for release, only to find out that IDOC would not allow them to begin parole.

Plaintiff, in contrast, submitted two potential parole sites for himself. It is unclear whether he was led to believe that he had satisfied the requirement to identify an acceptable residence. It is also unclear whether, had he been informed the addresses he submitted were inappropriate, he intended to depend on the defendants, or some other IDOC officials, to find him a place to live.[3] Plaintiff was obviously aware that an appropriate placement would have to be found for him before he could be paroled, as he submitted two potential addresses well before his MSR date. However, the Complaint does not indicate if or when he was notified whether Field Services approved or denied his placement requests or otherwise found him a halfway house placement. While Plaintiff is frustrated that the grievances he filed regarding this matter

---

[3] The Illinois Appellate Court-Fourth District found that the IDOC does not have a statutory or regulatory duty to find a residential placement for inmates who are eligible for parole/MSR, although it has authority to do so. *Lucas v. Dep't of Corr.*, 967 N.E.2d 832, 834-35 (Ill. App. 2012) (denying injunctive relief to sex offender who could not be released without a residential placement that allowed for electronic monitoring).

did not expedite his release from prison, the fact that this procedure did not have a favorable outcome does not mean that he was denied due process.

There is no information in the Complaint regarding whether Plaintiff had notice and an opportunity to seek review of the decision to retain him in prison after his MSR eligibility date. Further, the Complaint does not suggest any other procedural protections that should have been afforded to Plaintiff in connection with the decision to retain him in IDOC custody, nor do the facts of this case suggest any.

The basic requirements of due process are notice and an opportunity to be heard. *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 579, (1975) (at a minimum, due process requires "*some* kind of notice and . . . *some* kind of hearing") (emphasis in original); *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974). However, as noted above, IDOC officials have no authority to conduct a hearing with regard to a denial or revocation of parole, as that function is reserved for the PRB. Thus, some opportunity for review short of a hearing must suffice in this situation, and this Court agrees with the *Murdock* court's conclusion that the turnaround practice provides adequate notice and opportunity to challenge the denial of release for sex offenders who lack an approved housing site. The Complaint does not state a cognizable Fourteenth Amendment claim against the defendants. Accordingly, Count 2 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Count 3 – Equal Protection

Finally, Plaintiff alleges that he was discriminated against by the defendants "due to what [he is] labeled" in violation of the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1, p. 7). "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motived by a discriminatory purpose."

*Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001).   Actions may have discriminatory effect when they cause a plaintiff to be treated differently from other similarly situated individuals.   *Id.* at 636.   Further, to state a claim for violation of the Equal Protection Clause, plaintiffs usually must allege that they are members of a "suspect class."   *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).   "Prisoners are not a suspect class; conviction of crime justifies the imposition of many burdens."   *Johnson v. Daley*, 339 F.3d 582, 585-586 (7th Cir. 2003).

A plaintiff can also allege that the defendant discriminated against the plaintiff in particular—so called "class-of-one" claims.   Such claims require the plaintiff to allege that "the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment."   *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009).   To plausibly allege such a claim, the "plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis."   *Jackson v. Village of Western Springs*, 612 F. App'x 842, 847 (7th Cir. 2015).

It is not clear what Plaintiff believes the claimed discrimination is based upon – his "label" as a prisoner, as a sex offender (though Plaintiff does not indicate in the Complaint whether he is a sex offender), as a member of some other group or as a "class of one."   It is also not entirely clear based on the Complaint whether Plaintiff alleges the crux of the discrimination lies in the fact that others were released to halfway houses on MSR before him despite having later "out dates," or more generally in the fact that he was violated at the door and not allowed out on MSR.   Plaintiff has not alleged that he is in a suspect class.   Further, he has not negated any reasonably conceivable set of facts that could provide a rational basis for his being held in prison while others were released to halfway houses, or his being held in prison after his MSR

date generally.

In sum, Plaintiff has not provided any facts to show who actually discriminated against him, exactly how he was discriminated against, what his "label" is and why he believes his "label" is the reason he became the subject of discrimination. In the absence of these facts, Plaintiff has failed to state an equal protection claim upon which relief may be granted. Count 3 shall therefore be dismissed. Out of an abundance of caution, this dismissal shall be without prejudice.

## Pending Motion

Plaintiff has filed a Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2), which will be addressed in a separate Order of this Court.

## Disposition

**IT IS HEREBY ORDERED** that the Complaint (Doc. 1) is **DISMISSED** without prejudice with respect to **COUNTS 1** and **3** and with prejudice with respect to **COUNT 2**, all for failure to state a claim upon which relief may be granted.

Plaintiff is **GRANTED** leave to file a "First Amended Complaint" on or before **February 6, 2017.** Should Plaintiff fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

Should Plaintiff decide to file a First Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action (*i.e.* 16-cv-01062-SMY). The pleading shall present each claim in a separate count, and each count shall

specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant.  Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors.  Plaintiff should refrain from filing unnecessary exhibits.  Plaintiff should *include only related claims* in his new complaint.  Claims found to be unrelated to the Eighth Amendment cruel and unusual punishment and Fourteenth Amendment equal protection claims will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.  To enable Plaintiff to comply with this order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original Complaint.  Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00[4] remains due and payable, regardless of whether Plaintiff elects to file a First Amended Complaint.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

---

[4] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, *unless* pauper status has been granted.

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED: January 9, 2017**

<u>s/ STACI M. YANDLE</u>
**U.S. District Judge**