IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES COURTNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-1062-SMY |
| | ) |
| KIM BUTLER, | ) |
| ASST. WARDEN LASHBROOK, and | ) |
| TIM CHRISTIANSON, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff James Courtney, previously incarcerated at Menard Correctional Center ("Menard"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on September 21, 2016. Plaintiff's Complaint (Doc. 1) was dismissed for failure to state a claim upon which relief could be granted. (Doc. 5). Plaintiff was given leave to file a First Amended Complaint, which he did on January 27, 2017. (Doc. 8). In his First Amended Complaint, Plaintiff claims that the defendants violated his state and federal constitutional rights by incarcerating him beyond the date he was eligible for mandatory supervised release ("MSR"). Plaintiff is no longer incarcerated. Therefore, this Court will conduct a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), which provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal –
>
>     i.     is frivolous or malicious;
>
>     ii.    fails to state a claim on which relief may be granted; or

        iii.     seeks monetary relief against a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The First Amended Complaint

Plaintiff alleges that on October 4, 2013, he was told that he was "violated" and he would not be allowed to leave on MSR. (Doc. 8, p. 8). Plaintiff claims that he immediately wrote to Defendants Godinez, Harrington and Butler, complaining of his illegal incarceration and demanding he be released on MSR. *Id.* He also wrote grievances to the Illinois Department of

2

Corrections ("IDOC") and its affiliates, as well as against Field Services, but he never received a response. (Doc. 8, pp. 8-9). In the grievances against Field Services, Plaintiff stated that he had a parole site and had given them Mrs. Milburn's information. (Doc. 8, p. 9). He also informed them that he had provided the sex offender's halfway house in East St. Louis as another option, or would accept another halfway house of their choice. *Id.* Plaintiff knew Mrs. Milburn's address was a good parole site because she was 64 or 65 years old, and the closest school and/or daycare to her house was six blocks away. *Id.*

Plaintiff also claims that another prisoner, who became eligible for MSR after Plaintiff, was set to be sent to the East St. Louis halfway house for sex offenders, though the inmate was not, himself, a sex offender. *Id.* Plaintiff wrote to Godinez, Harrington, Butler and Lashbrook to complain about this practice. *Id.* He allegedly received no response to these complaints. (Doc. 1, p. 9).

Plaintiff further alleges that he was discriminated against by each of the defendants and not released on MSR due to his label as a child sex offender. (Doc. 8, p. 11). He maintains that the Illinois Department of Corrections ("IDOC") and its employees could have sent him to another halfway house or Mrs. Milburn's house, but they chose not to do so; at the same time, they sent an inmate who was not a sex offender to a parole site for which Plaintiff was eligible. *Id.* Mrs. Milburn told Plaintiff that she would write out an affidavit stating he could be paroled to her house. *Id.* Plaintiff does not indicate if she did so. *Id.*

On November 14, 2013, Plaintiff had a hearing with the parole board, which operates under the authority of Defendant Christianson. Plaintiff was not provided notice prior to the day of the hearing. *Id*. A member of the parole board informed Plaintiff that all he had to do was write to field services and give them an address for parole in order to be released. *Id.* Plaintiff

informed them that he had already done so in March or April 2013, but that he would do so again. *Id.* When Plaintiff returned to his cell, he again wrote to field services, requesting to be paroled at Mrs. Milburn's or the halfway house in East. St. Louis. *Id.* Plaintiff claims that had he been told in advance about the hearing, he would have contacted Mrs. Milburn to act as a witness for him so that she could testify that Plaintiff could parole at her house. (Doc. 8, p. 12).

Ford believes that each defendant retaliated against him due to his classification as a child sex offender and retaliated against him for grievances he wrote before and after his MSR date against corrections officers. *Id.* These grievances concerned corrections officers, IDOC workers, sergeants and lieutenants failing to stop the harassment of sex offenders, including Plaintiff, by other inmates. *Id.* Plaintiff alleges that he was held for an entire year past his MSR out date of October 4, 2013. (Doc. 8, p. 14). He requests monetary damages from the defendants. *Id.*

## Discussion

Based on the allegations of the First Amended Complaint, the Court finds it convenient to divide the *pro se* action into 3 counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Defendants subjected Plaintiff to cruel and unusual punishment contrary to the Eighth Amendment by failing to release him on his expected MSR date.

**Count 2 –** Defendants violated Plaintiff's Fourteenth Amendment Equal Protection rights by releasing prisoners with later MSR eligibility dates to sex offender halfway houses before releasing Plaintiff because of his status as a sex offender.

**Count 3 –** Defendants violated Plaintiff's First Amendment rights by refusing to release him on MSR when he became eligible in retaliation for his filing grievances against corrections officers.

As discussed in more detail below, Counts 1 through 3 will be dismissed for failure to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed with prejudice as inadequately pleaded under the *Twombly* pleading standard. Further, because each of the federal claims brought by the plaintiff in the First Amended Complaint are being dismissed, this Court will not consider any state law claims he seeks to bring in this action.

### Count 1 – Eighth Amendment

The Eighth Amendment protects prisoners from cruel and unusual punishment, including claims that prison officials, acting with deliberate indifference, held an inmate beyond the term of his incarceration without penological justification. *See, Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Eighth Amendment claims have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

The objective conditions must have resulted in an unquestioned and serious deprivation of a constitutional right. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987). The subjective component focuses on the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In order to satisfy this second requirement, a plaintiff must show that a defendant was deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994). In other words, the prison official must have acted or failed to act despite the official's knowledge that his course of action (or inaction) could result

in a violation of the prisoner's constitutional rights. *Farmer*, 511 U.S. at 842. "Deliberate indifference requires more than negligence, rather the defendant 'must meet essentially a criminal recklessness standard, that is, ignoring a known risk.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013)) (other internal quotation and citation omitted).

Plaintiff claims that on October 4, 2013, his MSR date, he was told that he was "violated" and would not be allowed to leave prison and was allegedly not released until one year after his projected MSR date. These allegations suggest that Plaintiff was most likely "paroled" merely on paper and returned to prison, and are sufficient to satisfy the objective component of an Eighth Amendment claim. *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. March 10, 2014). The remaining question is whether any defendant was deliberately indifferent to the risk that Plaintiff's incarceration would be improperly extended.

In his First Amended Complaint, Plaintiff alleges that he wrote at least two times to Godinez, Harrington, and Butler and once to Lashbrook, notifying them that they were illegally incarcerating him by holding him past his MSR date. However, as was the case with respect to his original Complaint (Doc. 1), Plaintiff fails to provide any factual support to show that any or all of the defendants were responsible for the decision to "violate him at the door." The same is true for Defendant Christianson, who is merely alleged to be the Chief of Parole, and is grouped in with IDOC as culpable for Plaintiff's "violation at the door." (Doc. 8, p. 8). Plaintiff does not indicate whether any of these defendants were personally involved in perpetuating the alleged constitutional violation, whether they actually received any correspondence from

Plaintiff regarding it, or whether they were even aware of it at all.[1] In the absence of such details, it is unclear where fault may lie. For these reasons, the First Amended Complaint fails to state a deliberate indifference claim and Count 1 shall be dismissed without prejudice.

### **Count 2 – Equal Protection**

Plaintiff further alleges that he was discriminated against by the defendants because of his status as a sex offender, in violation of the Equal Protection Clause of the Fourteenth Amendment. "To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motived by a discriminatory purpose." *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). Actions may have discriminatory effect when they cause a plaintiff to be treated differently from other similarly situated individuals. *Id.* at 636. Further, to state a claim for violation of the Equal Protection Clause, plaintiffs usually must allege that they are members of a "suspect class." *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). "Prisoners are not a suspect class; conviction of crime justifies the imposition of many burdens." *Johnson v. Daley*, 339 F.3d 582, 585-586 (7th Cir. 2003).

A plaintiff may also allege that the defendant discriminated against him in particular—so called "class-of-one" claims. Such claims require the plaintiff to allege that "the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Srail v. Village of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). To plausibly allege such a claim, the "plaintiff must negate any reasonably conceivable state of facts that could provide a rational basis." *Jackson v. Village of Western Springs*, 612 F. App'x 842, 847 (7th Cir. 2015).

---

[1] Generally, a defendant's role in responding to a grievance filed over the misconduct of others does not give rise to liability in a civil rights case, nor is a prison warden subject to liability as a supervisor. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (the doctrine of respondeat superior is not applicable to § 1983 actions).

Plaintiff alleges that he was discriminated against because of his status as a sex offender. Sex offender status, however, is not a suspect class for equal protection purposes. Plaintiff's allegations, once again, do not negate any reasonably conceivable set of facts that could provide a rational basis for his being held in prison while others were released to halfway houses, or his being held in prison after his MSR date generally. Also, as previously stated, he has failed to plead facts that would indicate his being held in prison past his MSR date was perpetuated by any of the defendants personally. Plaintiff has therefore failed to state a viable equal protection claim. Moreover, at this juncture, it is apparent that the relevant facts are simply insufficient to support such a claim. Thus, Count 2 shall be dismissed with prejudice.

### Count 3 – Retaliation

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). Once an inmate has made such complaints, if he or she experiences adverse action at the hands of prison officials that is likely to deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action, that inmate likely has a claim for retaliation. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

In this case, Plaintiff has failed to connect the defendants with any retaliatory action. It is unclear from the First Amended Complaint who is responsible for the decision to release Plaintiff on parole. It is also unclear whether any of the defendants were even aware that Plaintiff had filed grievances about prison officials, or whether they were aware he had been violated at the door on his MSR date, much less that the former inspired the latter. For these

reasons, Count 3 will be dismissed without prejudice.

**Pending Motion**

Plaintiff's Motion for Extension of Time to File First Amended Complaint (Doc. 7) is hereby **DENIED** as moot.

Plaintiff has filed a Motion for Status and Questions (Doc. 9), which is also **DENIED** as moot as this Order provides the current status of this case. Further, the Court refers Plaintiff to its Order dated January 9, 2017 (Doc. 5) for resolution of his questions.

**Disposition**

**IT IS HEREBY ORDERED** that the First Amended Complaint (Doc. 8) is **DISMISSED** without prejudice with respect to **COUNTS 1** and **3**, and with prejudice with respect to **COUNT 2**, all for failure to state a claim upon which relief may be granted.

Plaintiff is **GRANTED** leave to file a "Second Amended Complaint" on or before **June 27, 2017.** Should Plaintiff fail to file his Second Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

Should Plaintiff decide to file a Second Amended Complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "Second Amended Complaint," and he should use the case number for *this* action (*i.e.* 16-cv-01062-SMY). The pleading shall present each claim in a separate count, and each count shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the

actors. Plaintiff should refrain from filing unnecessary exhibits and should *include only related claims* in his new complaint. Claims found to be unrelated to the Eighth Amendment cruel and unusual punishment, Fourteenth Amendment equal protection, and First Amendment retaliation claims will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed. To enable Plaintiff to comply with this order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint. Thus, the Second Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the Second Amended Complaint. The Second Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a Second Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 30, 2017**

s/ STACI M. YANDLE
**U.S. District Judge**