# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES COURTNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-cv-1062-SMY |
| ) | |
| KIM BUTLER, ) | |
| ASST. WARDEN LASHBROOK, and ) | |
| TIM CHRISTIANSON, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff James Courtney, previously incarcerated at Menard Correctional Center ("Menard"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on September 21, 2016. Plaintiff's Complaint (Doc. 1) was dismissed for failure to state a claim upon which relief could be granted. (Doc. 5). Plaintiff was given leave to file a First Amended Complaint, which he did on January 27, 2017. (Doc. 8). Plaintiff's First Amended Complaint was dismissed for failure to state a claim upon which relief may be granted on May 30, 2017. (Doc. 10). Plaintiff was given leave to file a Second Amended Complaint, which he did on June 22, 2017. (Doc. 17).

In his Second Amended Complaint, Plaintiff claims that the defendants violated his state and federal constitutional rights by incarcerating him beyond the date he was eligible for mandatory supervised release ("MSR"). Plaintiff is no longer incarcerated. Therefore, this Court will conduct a preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), which provides:

1

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal –
>
> > i. is frivolous or malicious;
> >
> > ii. fails to state a claim on which relief may be granted; or
> >
> > iii. seeks monetary relief against a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Second Amended Complaint

In his Second Amended Complaint (Doc. 17), Plaintiff makes the following allegations: On October 4, 2013, he was told that he was "violated" by Defendant Christianson, the Illinois Department of Corrections ("IDOC") and "affiliates" and that he would not be allowed to leave on MSR. (Doc. 17, p. 7). Plaintiff claims that he immediately wrote to S.A. Godinez, the Director of IDOC, as well as Defendant Butler, complaining about his illegal incarceration and claiming that he had a parole site to which to parole. *Id.* He also wrote grievances to IDOC and its affiliates that "they [were] illegally holding [him] past [his] MSR out date (10-4-13) and that [he had] a good parole site" to parole to. (Doc. 17, pp. 7-8). Plaintiff also wrote grievances to Field Services "for not doing their jobs," claiming that he had a parole site and requesting, in the alternative, to be sent to the sex offenders' halfway house in East St. Louis. (Doc. 17, p. 8). Plaintiff had written to Field Services three or four months prior to his out-date informing them of his parole site. *Id.* IDOC sent offenders who are not sex offenders to the sex offender halfway house despite the fact that they had out-dates after his. *Id.* "IDOC and their affiliates [had] numerous halfway houses they could [have] sent [Plaintiff] to. They chose not to. Because what [Plaintiff] is labeled (child sex offender)." (Doc. 17, p. 9).

On November 14, 2013, Plaintiff had a hearing with the parole board, which operates under the authority of Defendant Christianson. *Id.* Plaintiff was not provided notice prior to the day of the hearing. (Doc. 17, p. 10). A member of the parole board informed Plaintiff that all he had to do was write to field services and give them an address for parole in order to be released. (Doc. 17, p. 9). Plaintiff informed them that he had already done so in March or April 2013, but that he would do so again. *Id.* When Plaintiff returned to his cell, he again wrote to field services, giving them the same information. (Doc. 17, pp. 9-10).

Plaintiff believes that each defendant along with IDOC and its affiliates retaliated against him due to his classification as a child sex offender and retaliated against him for grievances he wrote against corrections officers and field services "for not doing their jobs." (Doc. 17, p. 10). Plaintiff alleges that he was held for an entire year past his MSR out date of October 4, 2013. (Doc. 17, p. 13). He requests monetary damages from the defendants. *Id.*

## Discussion

Based on the allegations of the Second Amended Complaint, the Court will consider the counts it previously designated in this action that have not yet been dismissed with prejudice, as Plaintiff has brought the same claims in his Second Amended Complaint as he brought in previous iterations of his complaint. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1 –** Defendants subjected Plaintiff to cruel and unusual punishment contrary to the Eighth Amendment by failing to release him on his expected MSR date.

**Count 3 –** Defendants violated Plaintiff's First Amendment rights by refusing to release him on MSR when he became eligible in retaliation for his filing grievances.

As discussed in more detail below, Counts 1 and 3 will be dismissed for failure to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed with prejudice as inadequately pleaded under the *Twombly* pleading standard. Further, because each of the federal claims brought by the plaintiff in the Second Amended Complaint are being dismissed, this Court will not consider any state law claims he seeks to bring in this action.

## Count 1 – Eighth Amendment

The Eighth Amendment protects prisoners from cruel and unusual punishment, including claims that prison officials, acting with deliberate indifference, held an inmate beyond the term of his incarceration without penological justification. *See, Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Eighth Amendment claims have both an objective and subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter*, 501 U.S. 294, 302 (1991).

The objective conditions must have resulted in an unquestioned and serious deprivation of a constitutional right. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987). The subjective component focuses on the state of mind of the defendant. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992); *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In order to satisfy this second requirement, a plaintiff must show that a defendant was deliberately indifferent to a substantial risk of serious harm to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994). In other words, the prison official must have acted or failed to act despite the official's knowledge that his course of action (or inaction) could result in a violation of the prisoner's constitutional rights. *Farmer*, 511 U.S. at 842. "Deliberate indifference requires more than negligence, rather the defendant 'must meet essentially a criminal recklessness standard, that is, ignoring a known risk.'" *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (quoting *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013)) (other internal quotation and citation omitted).

Plaintiff claims that on October 4, 2013, his MSR date, he was told that he would not be allowed to leave prison and was allegedly not released until one year after his projected MSR date. These allegations suggest that Plaintiff was most likely "paroled" merely on paper and returned to prison, and are sufficient to satisfy the objective component of an Eighth Amendment claim. *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. March 10, 2014). The remaining question is whether any defendant was deliberately indifferent to the risk that Plaintiff's incarceration would be improperly extended.

In his Second Amended Complaint, Plaintiff alleges that he wrote at least once to Butler to notify her that he was being illegally incarcerated. He does not claim that he wrote to Lashbrook. As was the case with his original Complaint (Doc. 1) and First Amended Complaint (Doc. 8), Plaintiff fails to provide any factual support to show that any or all of the defendants were actually responsible for the decision to "violate him at the door."[1] It is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may

---

[1] The discussion in *Murdock* of the shortcomings of Illinois' parole system vis-à-vis sex offenders is instructive as to who may be to blame for Plaintiff's delayed release. *Murdock v. Walker*, No. 08-C-1142, 2014 WL 916992 (N.D. Ill. March 10, 2014). In a nutshell, the Illinois Prisoner Review Board ("PRB") is responsible for determining whether a prisoner has served a sufficient portion of his sentence to be released on parole/mandatory supervised release, and if so, can order his release. 730 ILL. COMP. STAT. 5/3-3-7. The PRB also sets the conditions for parole, and determines whether parole should be revoked if a condition is violated. 730 ILL. COMP. STAT. 5/3-3-1. IDOC, which is an agency independent from the PRB, retains custody of parolees and supervises them during their parole term. Before IDOC may release an inmate on parole, it must determine whether an individual parolee is in compliance with all conditions of his supervised release. These conditions include being housed in a "proper and approved residence." *Murdock*, 2014 WL 916992, at *9-10 (quoting 20 ILL. ADMIN. CODE § 1610.110(a)(1)). The Code directs that a parolee "*shall not be released*" until suitable housing arrangements have been made. § 1610.110(a) (emphasis added). Sex offenders face many statutory restrictions on where they may reside, such as the home's proximity to schools, parks, day care centers, and other known sex offenders. See 730 ILL. COMP. STAT. 5/3-3-7. Numerous sex offenders who are otherwise eligible for parole – the class of Plaintiffs certified in *Murdock* – have been and are continuing to be held in prison by IDOC officials because they lacked an approved residence, and thus could not comply with the conditions of their parole. This has become known as the "turnaround practice" – an inmate is technically "paroled," but is turned around at the prison gate and returned to custody because he cannot be released without a parole site. The Murdock court characterized this as a "Kafkaesque loop," and observed, "The Plaintiffs are caught in a system that requires the intervention of the Illinois legislature, not this Court." *Murdock*, at *4, *15.

not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiff's claims against the defendants are vague, conclusory and assume the defendants' culpability based solely on their positions of power. Such an assumption is unavailing.

Plaintiff's Second Amended Complaint is, in essence, a less detailed version of his First Amended Complaint and very similar to his initial Complaint. These previous complaints were dismissed for failure to state a claim upon which relief may be granted. Generally, an amended complaint that states the same facts using different language will be futile. *Garcia v. City of Chicago*, *Ill.*, 24 F.3d 966, 970 (7th Cir. 1994). That is the case with respect to Count 1 of Plaintiff's Second Amended Complaint. Count 1 will therefore be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## Count 3 – Retaliation

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000). Once an inmate has made such complaints, if he or she experiences adverse action at the hands of prison officials that is likely to deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action, that inmate likely has a claim for retaliation. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009).

In this case, Plaintiff has failed to connect the defendants with any retaliatory action. It is unclear from the Second Amended Complaint who is actually responsible for the decision to

7

release Plaintiff on parole.  It is also unclear whether any of the defendants were even aware that Plaintiff had filed grievances about prison officials, or whether they were aware that he was being violated at the door on his MSR date, much less that the former inspired the latter. Accordingly, Count 3 will be dismissed.  Moreover, because Plaintiff has stated the same facts with respect to this claim for at least a second time, allowing him to amend Count 3 would be futile.  Therefore, Count 3 will also be dismissed with prejudice.

Plaintiff has brought essentially the same facts in this most recent complaint as he did in his initial Complaint and First Amended Complaint.  He has not shown this Court that he has information that would implicate the defendants he has named in any way for his violation at the door in 2013.  Plaintiff will therefore not be granted leave to amend, and this action will be dismissed with prejudice.  *Garcia*, 24 F.3d at 970.

## **Pending Motion**

Plaintiff's Motion for Extension of Time to File Second Amended Complaint (Doc. 12) is hereby **DENIED** as moot.

Plaintiff's Motion to Change Venue (Doc. 11) is also **DENIED**.  In his Motion (Doc. 11), Plaintiff asks that the case be transferred to a different judge.  He claims that "Judge Staci M. Yandle is very prejudice against him, due to what he is labeled (child sex offender)," that he has stated valid claims, and that he "feels that the Judge presiding over his case is not ruling fair." (Doc. 11, p. 1).

Two statutes are relevant to Plaintiff's recusal request.  Under 28 U.S.C. § 455, a judge is obligated to recuse herself from hearing a case under certain circumstances, whether or not a party files a motion seeking the judge's recusal.  This statute states, in pertinent part:

> **(a)** Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> **(b)** He shall also disqualify himself in the following circumstances:
>> **(1)** Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

A separate statute, 28 U.S.C. § 144, provides for recusal if a party files a "timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."[2] *Id*.

The disqualification standard set forth in 28 U.S.C. § 455(a) is objective and "asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *In re Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998) (quoting *Hook v. McDade*, 89 F.3d 350, 354 (7th Cir. 1996)). The decision to recuse turns not on the judge's actual partiality but on the appearance of partiality. *Hatcher*, 150 F.3d at 637 (citing *Liteky v. United States*, 510 U.S. 540, 548 (1994)). "[T]he judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). The purpose of the statute "is to preserve the appearance of impartiality." *United States v. Johnson,* 680 F.3d 966, 979 (7th Cir.), *cert. denied,* 133 S. Ct. 672 (2012).

"Section 455(a) requires recusal if the judge's impartiality might reasonably be questioned by a well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 988 (7th Cir. 2001)

---

[2] The entire text of 28 U.S.C. § 144 is as follows: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith."

(internal quotations omitted); *accord Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). The risk of perceived partiality must be "substantially out of the ordinary" before recusal is justified. *Hook*, 89 F.3d at 354 (citing *In re Mason*, 916 F.2d 384, 385-86 (7th Cir. 1990)).

Doubts about whether recusal is required should be resolved in favor of recusal. *New York City Hous. Dev. Corp. v. Hart*, 796 F.2d 976, 980 (7th Cir. 1986); *Nichols*, 71 F.3d at 352. At the same time, a judge has an obligation to hear cases before her where there is no legitimate reason for recusal. *Hart*, 796 F.2d at 980-81; *Nichols*, 71 F.3d at 351. "The statute must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Nichols*, 71 F.3d at 351. (internal quotations omitted). The Court is also mindful that the statute is not a judge-shopping device. *Nichols*, 71 F.3d at 351; *Hook*, 89 F.3d at 354.

Both § 455(b)(1) and § 144 address personal bias on the part of the judge concerning a party to the litigation. Under either provision, bias justifying recusal must arise from an extrajudicial source. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 988 (7th Cir. 2001). "[N]either judicial rulings nor opinions formed by the judge as a result of current or prior proceedings constitute a basis for recusal 'unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *United States v. White*, 582 F.3d 787, 807 (7th Cir. 2009) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "Furthermore, 'expressions of impatience, dissatisfaction, annoyance, and even anger' do not justify requiring recusal." *White*, 582 F.3d at 807 (quoting *Liteky*, 510 U.S. at 555-56).

Under § 144, which does not come into play unless a party files the required affidavit, recusal is mandated if the affidavit is both "timely and sufficient." 28 U.S.C. § 144. An affidavit is not timely unless it is filed as soon as the movant is aware of the facts establishing the

basis for the judge's disqualification. *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993). "An affidavit is sufficient if it avers facts that, if true, would convince a reasonable person that bias exists." *United States v. Balistrieri*, 779 F.2d 1191, 1199 (7th Cir. 1985); *accord O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 989 (7th Cir. 2001). The facts in the affidavit must be stated with particularity and must be definite as to times, places, persons and circumstances. They cannot be mere conclusions, opinions, or rumors. *O'Regan*, 246 F.3d at 989; *Sykes*, 3 F.3d at 1339; *Balistrieri*, 779 F.2d at 1199. The affidavit also must show "that the bias is personal rather than judicial, and that it stems from an extrajudicial source – some source other than what the judge has learned through participation in the case." *Balistrieri*, 779 F.2d at 1199 (citations omitted); *accord Sykes*, 3 F.3d at 1339. All allegations in the affidavit must be taken as true, even if the Court knows them to be false. *Sykes*, 7 F.3d at 1339; *Balistrieri*, 779 F.2d at 1199. Because the statute "is heavily weighed in favor of recusal," its requirements are to be strictly construed to prevent abuse. *Sykes*, 3 F.3d at 1339; *Balistrieri*, 779 F.2d at 1199.

Plaintiff's stated reasons for disqualification are insufficient under any of the standards discussed above. Nothing in Plaintiff's motion suggests any circumstance that might cause a reasonable person to question the impartiality of the undersigned Judge. Nor does it indicate that the undersigned bears any personal bias or prejudice against Plaintiff or in favor of any of the Defendants aside from his unsupported claim that the undersigned is prejudiced against him because of his label as a child sex offender. This is an entirely unsupported claim that a well-informed, thoughtful observer would have no reason to believe. Plaintiff's main issue appears to be that the undersigned has thus far not ruled in his favor. This is not a valid reason for recusal.

Having considered Plaintiff's motion, the undersigned Judge confirms that she has heard Plaintiff's claims without any prejudgment, partiality, bias, or prejudice. The fact that Plaintiff

11

has sought recusal is his right, and has not affected nor will it affect the consideration of his claims. The undersigned concludes that there is no basis for recusal under 28 U.S.C. § 455(a) or (b)(1). Had the allegations in Plaintiff's Motion (Doc. 11) been brought in an affidavit pursuant to 28 U.S.C. § 144, there would still be no basis for recusal. Plaintiff's Change of Venue Motion (Doc. 11) is therefore appropriately **DENIED**.

Plaintiff's Motion to Allow Newly Discovered Evidence (Doc. 19) is also **DENIED**. The Court does not allow piecemeal amendments to complaints. Further, even if this Court were to consider the "evidence" in its analysis of Plaintiff's claims, the analysis would be unchanged. The Motion (Doc. 19) does not provide any additional information as to Plaintiff's particular situation because it is merely a series of quotes from various state and federal cases, not additional allegations.

## Disposition

**IT IS HEREBY ORDERED** that the Second Amended Complaint and this action are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this Order, he may file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. 4(A)(4). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee **regardless** of the outcome of the appeal. *See* FED. R. APP. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockish*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of

Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

This dismissal shall **not** count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: October 30, 2017**

s/ STACI M. YANDLE
**U.S. District Judge**