IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMES COURTNEY,**

         **Plaintiff,**

**v.**

**KIMBERLY BUTLER,
JACQUELINE LASHBROOK,
SALVADOR GODINEZ, and
RICK HARRINGTON,**

         **Defendants.**

**Case No. 3:16-CV-1062-NJR**

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, Chief Judge:**

More than a decade ago, the Prisoner Review Board at Menard Correctional Center found Plaintiff James Courtney violated the terms of his Mandatory Supervised Release ("MSR") before he even took a step out of Menard Correctional Center, a prison within the Illinois Department of Corrections ("IDOC"). Prior to his expected release date on October 5, 2013, Courtney—a sex offender—was required to provide a suitable host site where he could be monitored electronically per the terms of his MSR. Because he failed to do so, Courtney was deemed to have "violated at the door." Courtney spent one year of his MSR in prison before he was eventually released.

First *pro se*, then with the assistance of recruited counsel, Courtney filed a lawsuit against Defendants Kimberly Butler, Jacqueline Lashbrook, Salvador Godinez, and Rick Harrington alleging that their actions wrongfully prolonged his detention, violated his right to substantive due process under the Fifth and Fourteenth Amendments, and constituted cruel and unusual punishment under the Eighth Amendment. (Docs. 1, 69).

In August 2021, this Court dismissed Courtney's case in its entirety, finding that his claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Courtney appealed that decision, and the Seventh Circuit Court of Appeals reversed it in part, remanding the case for further proceedings on Courtney's claim that Defendants deliberately or recklessly failed to effect his release when they failed to investigate the host sites he had identified and then ignored his grievances complaining about his wrongful detention.

On remand, the Court turns to the merits of Defendants' summary judgment motion, which was fully briefed prior to Courtney's appeal. (Docs. 131, 138, 143). The parties also provided the Court with supplemental briefing on the issues before the Court, focusing on the defense of qualified immunity. (Docs. 160, 163). For the following reasons, Defendants' motion for summary judgment is granted in part and denied in part.

BACKGROUND

In May 2012, Courtney was sentenced to three years in prison and one year of mandatory supervised release (MSR) by the Circuit Court of Marion County, Illinois, after violating his parole for failing to register as a sex offender. (Docs. 132-1; 132-2). Courtney entered the IDOC at Menard Correctional Center. (Doc. 132-1). His projected "out date" was October 5, 2013. (Doc. 132-5).

As a sex offender, Courtney was required to have an approved host site upon release from prison. (Doc. 138-18 at p. 54). For Courtney, an acceptable host site was one where no minors lived and that was at least 500 feet away from any school. (Doc. 132-3 at p. 67). Pursuant to the IDOC's Administrative Directives, the Field Services office has an obligation to assist offenders scheduled for MSR in obtaining a host site and developing a release plan. (Doc. 138-1; Doc. 138-18 at pp. 92-93). This obligation begins 12 months before an offender's

scheduled release date and continues until he is released from IDOC custody. (Doc. 138-1; Doc. 138-18 at pp. 93-95).

Once an offender proposes one or more host sites, the Field Services office conveys those sites through a computer system, known as OTS at the time of Courtney's incarceration, to the parole office for investigation. (Doc. 138-18 at pp. 96-97). If a proposed host site is rejected and the offender cannot provide an alternate address, the Field Service Representative is required, under Administrative Directive 04.50.110(II)(H)(3), to develop alternative release plans and enter them in OTS. (Doc. 138-1 at p. 5; Doc. 138-19 at pp. 32-34). If no alternative plan is developed, the Field Service Representative is required to contact the Placement Resource Unit ("PRU"), which shall develop and enter alternative plans and enter them in OTS. (*Id*.). An alternative release plan can include placement at a residential facility or transitional housing, also known as a halfway house. (*Id*.) The Warden of the prison, also known as the Chief Administrative Officer (CAO), is required to ensure the Field Services office fulfills its obligations. (Doc. 138-1; Doc. 138-18 at p. 92).

On August 29, 2012, more than a year before his projected release date, Courtney submitted a proposed parole plan to Field Services that listed two potential host sites: the home of Faye Milburn on Rhodes Street in Centralia, Illinois, or the "halfway house in East St. Louis my parole agent told me about." (Doc. 138-3). Courtney's proposed host site on Rhodes Street was denied because three children lived at that address. (Doc. 138-5).

In March or April 2013, Courtney wrote a note, called a kite, to Field Services providing a new host site address. (Doc. 132-3 at p. 72). Courtney proposed to live at another home owned by Faye Milburn located on N. Maple Street in Centralia (*Id*.). Courtney placed the kite in the institutional mailbox for Field Services. (*Id*. at p. 74). When he did not receive

a response, Courtney wrote a follow-up kite a few months before he was supposed to be released on MSR. (*Id.* at pp. 75-76). He did not receive a response to this kite, either. (*Id.* at p. 77). Courtney's proposed address on N. Maple was not investigated as a potential host site. (Doc. 138-18 at pp. 127-28, 141; Doc. 138-19 at pp. 56-57).

On another occasion, on an unknown date, Courtney submitted a kite suggesting a host site of Faye Milburn's property on N. Locust in Centralia or the halfway house in East St. Louis. (Doc. 132-6). The IDOC's corporate representative, Shellie Cartwright, testified that someone at Menard received this kite and should have put it through the proper channel at Field Services so that the address could have been investigated. (Doc. 138-18 at p. 138). However, the N. Locust address was never investigated as a potential host site. (*Id.* at p. 141; Doc. 138-19 at p. 57).

On June 20, 2013, the Prisoner Review Board approved Courtney for MSR subject to certain conditions. (Doc. 138-4). On October 4, 2013, Courtney's scheduled release date, the Prisoner Review Board determined Courtney had not provided a suitable host site where he could be monitored electronically per the terms of his MSR. (Doc. 132-6 at p. 2). A warrant signed by Defendant Godinez was issued for Courtney's arrest for violating the terms of his MSR, and instead of being released to a host site for his term of MSR, Courtney was "violated at the door." (*Id.* at p. 6). Courtney signed an "Electronic Detention Program Agreement," which stated he would be residing at "Menard C.C." (*Id.* at p. 5). Courtney's Parole Violation Report stated: "The above mentioned inmate could not provide suitable housing where he could be monitored. . . . The above mentioned inmate is to be referred to the placement resource unit so adequate housing may be located in as expeditious a manner as possible." (*Id.* at p. 2).

Upon realizing he would not be leaving Menard, Courtney wrote grievances and kites to Defendants claiming he was being held hostage and had a good parole site that was not investigated. On October 4, 2013, the day he "violated at the door," Courtney wrote letters to Defendant Harrington, who was the CAO of Menard, Defendant Godinez, who was the IDOC Director, and Defendant Butler, who was the Assistant Warden at Menard, stating that he was being held hostage past his MSR date. (Doc. 132-9). The letters were written on a sheet of legal paper, signed by Courtney, and placed in the institutional mailbox. (Doc. 132-3 at pp. 82-84). This is the general practice for sending messages to prison officials. (Doc. 138-18 at p. 65). Courtney could not make photocopies of these letters, so he wrote duplicates of each for his records. (*Id.* at p. 84). He did not get a response to these letters. (*Id.* at p. 86). The Warden's kite log does not show that a kite regarding a host site was received by CAO Harrington. (Doc. 132-10).

That same day, Courtney wrote an emergency grievance stating that he was being held hostage past his MSR date and that he submitted a parole site on N. Maple Street to Field Services six months prior. (Doc. 132-7; Doc. 132-3 at pp. 86-88). Courtney's cumulative counseling summary does not reflect an emergency grievance being sent or received on October 4, 2013. (Doc. 132-8). Courtney did not get a response to this grievance. (Doc. 132-3 at p. 88).

On October 15, 2023, Courtney sent additional letters to CAO Harrington, Director Godinez, Assistant Warden Butler, and Defendant Lashbrook, who was a Lieutenant at that time. (Doc. 132-9). Again, Courtney received no response. (Doc. 132-3 at p. 102).

Courtney filed another grievance three days later complaining that he was being held illegally by IDOC because he had a valid host site to be released to and Field Services was

not doing its job. (Doc. 132-11). Courtney claimed that no one had spoken to Faye Milburn and no one had assisted him in developing a release plan. (*Id*.). Courtney's requested relief was for "Field Services to do their job like they R supposed to and find me a host site A.S.A.P." (*Id*.). The Grievance Counselor responded to Courtney's grievance stating, "Host site for friend denied and a half-way house is currently under investigation." (*Id*.). The Counselor further stated that it was Courtney's responsibility to provide Field Services with suitable living arrangements and while Field Services could help find a site, there was limited availability considering that Courtney was a sex offender. (*Id*.). Courtney appealed this grievance to the Grievance Officer, who recommended that the grievance be denied. (Doc. 132-13). The Grievance Officer noted that, "Per Field Service offenders site was denied by sex offender parole service. Offender has been submitted for halfway house on 11/8/13." (*Id*.). CAO Harrington concurred in the denial on December 24, 2013. (*Id*.). On appeal, the Administrative Review Board also found the grievance to have no merit since Courtney had not provided the IDOC with a suitable location. (Doc. 132-15). Godinez, as IDOC Director, concurred in the denial of the grievance appeal. (*Id*.).

Despite the IDOC's assurances that Courtney had been submitted for placement at a halfway house, there is no documentation from Courtney's master file to indicate that is true. (*Id*.). The only transitional housing facility in the State of Illinois during 2013 and 2014 that accepted sex offenders like Courtney was Another Chance Ministries in East St. Louis, Illinois. (*Id*. at pp. 53-54; Doc. 138-16; Doc. 138-17)). Another Chance Ministries accepted 105 offenders released from IDOC during 2013 and 2014, at least 50 of which had MSR dates *after* Courtney. (Doc. 138-19 at p. 27). No attempts were ever made by any IDOC or Menard employee to place Courtney at Another Chance Ministries in 2013 or 2014. (*Id*. at pp. 53-54).

Courtney filed another grievance regarding the status of his parole site on February 28, 2014. (Doc. 132-8). According to his cumulative counseling summary, this grievance was returned to Courtney because the issue was "previously addressed on grv no. 71-11-13. No justification for further consideration." (*Id.*).

CAO Harrington retired from IDOC in April 2014, but due to having excess vacation time, he was not present at Menard after February 2014. (Doc. 138-22 at p. 1). Butler then became the CAO and Lashbrook became the Assistant Warden. (Doc. 132-16 at p. 3).

Sometime in March or April 2014, Courtney sent a kite to Lashbrook after she became the Assistant Warden. Courtney complained about being held hostage after his out date, but he did not receive a response. (Doc. 132-3 at pp. 156-57).

On April 15, 2014, Courtney sent a kite to Butler, who was now the CAO of Menard, stating that he was still being held hostage past his MSR date, that he wrote her a letter on October 4, 2013, to which he received no response, and that he wanted to know why non-sex offenders with release dates after his were being released to Another Chance Ministries. (Doc. 132-9). The Warden's 2014 Kite Log, which is redacted of inmate names and numbers, contains an entry from April 18, 2014, stating: "needs to hear from Field Services re: parole site." (Doc. 132-17 at p. 8). It is unclear if this kite was from Courtney or another inmate. (*Id.*).

None of the Defendants recall receiving, reviewing, or otherwise speaking with anyone about Courtney's grievances or kites regarding his proposed host site or continued incarceration. (Docs. 138-22, 138-23, 138-25, 138-26).

Courtney was released from Menard upon the expiration of his sentence on October 3, 2014. (Doc. 138-11). He filed this lawsuit pursuant to 42 U.S.C. § 1983 on September 21, 2016. (Doc. 1).

## LEGAL STANDARD

Summary judgment is proper if the movant shows that no material facts are in genuine dispute and that the movant is entitled to judgment as a matter of law. *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (citing FED. R. CIV. P. 56(a)). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## DISCUSSION

At issue in this case is whether Defendants violated Courtney's constitutional rights when they failed to effectuate his release by investigating the host sites he had identified and/or ignored his grievances complaining about his wrongful detention. Courtney brings

claims under both the Eighth Amendment and the substantive due process clause of the Fourteenth Amendment. Defendants make several arguments as to why summary judgment should be granted in their favor.

## I.      Statute of Limitations as to Defendants Godinez and Harrington

Defendants first argue that the claims against Godinez and Harrington are barred by the two-year statute of limitations.[1]  Courtney filed his original Complaint on September 19, 2016—less than two years after he was released from prison on October 3, 2014—naming Butler, Godinez, Harrington, and Lashbrook as defendants. (Doc. 1). District Judge Staci M. Yandle dismissed the Complaint on threshold review, without prejudice, and with leave to file a First Amended Complaint. (*Id.*). Courtney then filed his First Amended Complaint against Butler, Lashbrook, and Tim Christianson on January 27, 2017. (Doc. 8). The First Amended Complaint did not name Godinez or Harrington as defendants, but the substance of Courtney's allegations remained the same. (*Id.*). Judge Yandle dismissed Courtney's First Amended Complaint and again granted Courtney leave to amend his complaint. (Doc. 10). Courtney filed a Second Amended Complaint against Butler, Christianson, and Lashbrook on June 22, 2017. (Doc. 17). Judge Yandle dismissed that complaint with prejudice and entered judgment. (Doc. 22). Courtney appealed that decision, and in February 2019, the Court of Appeals for the Seventh Circuit remanded the case for further proceedings on Courtney's Eighth Amendment and substantive due process claims. (Doc. 33).

On June 29, 2019, this time with the assistance of counsel, Courtney filed a motion for

---

[1]  Title 42 U.S.C. § 1983 does not contain an express statute of limitations, so federal courts adopt the forum state's statute of limitations for personal injury claims. *Johnson v. Rivera*, 272 F.3d 519, 521 (7th Cir. 2001). In Illinois, the limitations period for § 1983 cases is two years. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017).

leave to file a third amended complaint and to rename Godinez and Harrington as defendants. (Doc. 63). Defendants opposed the motion on the basis of undue prejudice and the statute of limitations. (Doc. 64). The Court granted Courtney's motion, finding that Defendants would not be prejudiced by the amendment, and any statute of limitations issues should be raised in a motion to dismiss to allow for more robust briefing on the issues. (Doc. 67). On October 11, 2019, Courtney filed his Third Amended Complaint naming Butler, Godinez, Harrington, and Lashbrook as defendants. (Doc. 69).

A. *Defendant Harrington*

The Court first addresses the argument that the statute of limitations as to Defendant Harrington expired in April 2016, approximately five months before Courtney originally filed this lawsuit. Defendants assert that when Harrington retired from the IDOC in April 2014, he ceased to be a state actor and no longer had any authority over Courtney's incarceration. At that point, Defendants assert, the statute of limitations began running as to Harrington. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (a constitutional violation continues only for as long as the defendant has the power to do something about the condition). In response, Courtney contends that because the alleged violation of his constitutional rights was an ongoing injury, the statute of limitations as to *all* Defendants did not begin to run until he was discharged from prison on October 3, 2014.

Despite the alleged continuing violation of Courtney's constitutional rights, under existing precedent, the statute of limitations as to Harrington expired two years after he retired from the IDOC. *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 518 (7th Cir. 2019) ("[E]ven under [the continuing violation] theory, if a defendant leaves the institution altogether, his involvement in the alleged wrong is over. The date of the defendant's

departure thus marks the last possible time when the claim might have accrued."). Since Harrington retired in April 2014, Courtney's claim against him, originally filed in September 2016, is barred by the two-year statute of limitations.

Courtney asserts equitable tolling applies to save his claim against Harrington because he should have been allowed to proceed on his original Complaint. Unfortunately for Courtney, however, he has provided no case law "contradicting the binding precedent set forth in *Wilson*," nor has the Court found any. *See Wiley v. Young*, No. 21-CV-599-JPG, 2022 WL 1289354, at *2 (S.D. Ill. Apr. 29, 2022). The statute of limitations for Harrington expired in April 2016; Courtney's original Complaint filed in September 2016 was too late.

### B.   *Defendant Godinez*

Defendants next assert that the statute of limitations began running as to Defendant Godinez when Courtney excluded him as a named defendant in his First Amended Complaint on January 27, 2017, and more than two years elapsed before Courtney renamed Godinez as a defendant in the Third Amended Complaint filed on June 29, 2019.

In response, Courtney argues that the statute of limitations was tolled during threshold review of the first and second amended complaints because 28 U.S.C. § 1915(e)(2)(B) and 42 U.S.C § 1997e(c)(1) constitute statutory prohibitions on a prisoner civil rights plaintiff's ability to serve a defendant and begin litigation.

The Court notes that Courtney was not incarcerated when he filed this lawsuit, so the case is not governed by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e. *See Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998). It was, however, governed by 28 U.S.C. § 1915(e)(2)(B) because Courtney moved to proceed *in forma pauperis*. And when the district court screened the original, timely filed Complaint, it erroneously determined that Count 1—

Courtney's claim that Defendants' violated his Eighth Amendment rights—failed to state a claim upon which relief could be granted. (*See* Doc. 5). The district court made the same error when it dismissed Count 1 of the First Amended Complaint. The First Amended Complaint alleged virtually the same facts as the original Complaint, although it did not name Godinez as a defendant.

History repeated itself with the Second Amended Complaint. In its threshold review order, the district court acknowledged: "Plaintiff has brought the same claims in his Second Amended Complaint as he brought in previous iterations of his complaint." (Doc. 22 at p. 4). It also noted that the Second Amended Complaint was "very similar to his initial Complaint." (*Id.* at p. 7). It then dismissed Count 1 with prejudice for failure to state a claim. (*Id.*). Judgment was entered, and the Clerk of Court was directed to close the case. (Doc. 23).

Courtney appealed this final judgment, and the Court of Appeals reversed and remanded the case for further proceedings. *Courtney v. Butler*, 756 F. App'x 626, 627 (7th Cir. 2019). The Court of Appeals found that Courtney had stated an Eighth Amendment claim when he alleged that Butler and Lashbrook—the two Defendants named in Count 1 of his Second Amended Complaint—knew he was being unlawfully held past his release date and did nothing in response. *Id.* This is the same claim that Courtney made against Godinez in his original Complaint, which was erroneously dismissed without prejudice.

Under Federal Rule of Civil Procedure 15(c)(1)(B), if a timely complaint is dismissed but the action remains pending, an amended complaint relates back to the filing of the original complaint when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. . . ." FED. R. CIV. P. 15(c)(1)(B). Here, the original Complaint was timely filed, the

action remained pending (by virtue of the Seventh Circuit's reversal and remand), and the Third Amended Complaint asserted a claim that arose out of the conduct alleged in the original pleading. But for the district court's erroneous dismissal of Count 1 on threshold review of the original complaint, Courtney would have proceeded against Godinez from the start. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1021 (7th Cir. 2013).

Defendants argue that if a suit or party is dismissed, even without prejudice, it is like that case had never been filed for statute of limitations purposes, citing *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000). Thus, they argue, when Courtney dismissed Godinez by failing to name him in his First Amended Complaint, it was as if the lawsuit against him had never been filed and the statute of limitations had never stopped running. *Elmore*, however, does not reference the dismissal of a party, only the dismissal of a "suit." *Id.* The court explained that, if that were not the rule, a plaintiff could easily file a suit—thereby stopping the statute of limitations—dismiss it voluntarily the next day, and have forever to refile it. *Id.* As explained in *Luevano*, that rule only applies when the *entire case* is dismissed. *Luevano*, 722 F.3d 1014, 1025 (7th Cir. 2013). The dismissal of a complaint without prejudice and with leave to refile an amended complaint means the case itself remains pending. *Id.* at 1026.

That is what happened here. The district court dismissed Courtney's complaints twice without prejudice, allowing Courtney time to amend. The third dismissal was with prejudice, but the Court of Appeals reversed that decision. Thus, the "action" remained pending and the Third Amended Complaint relates back to the original, timely filed complaint. Defendant Godinez will not be dismissed on statute of limitations grounds.

## II.     Courtney's Constitutional Claims

Turning to the merits of Courtney's constitutional claims, the Seventh Circuit Court

of Appeals has directed this Court to evaluate the "difficult question" of "whether Courtney's claims are more appropriately analyzed under the substantive due process clause or the Eighth Amendment." *Courtney v. Butler*, 756 F. App'x 626, 627 (7th Cir. 2019).

Defendants argue that Courtney's claims should be analyzed under the Eighth Amendment rather than the substantive due process clause of the Fourteenth Amendment because the Eighth Amendment provides an "explicit textual source of constitutional protection." *See County of Sacramento v. Lewis*, 523 U.S. 833, 841 (1998) (quotation omitted) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [those] claims."). For his part, Courtney takes no position as to whether the Eighth Amendment or the Fourteenth Amendment applies, because, in his eyes, the analysis overlaps and leads to the same result: a denial of summary judgment.

In support of their argument that the Eighth Amendment applies, Defendants point to *McGuire v. Sturch*, in which the Northern District of Illinois faced a similar factual scenario. No. 16-CV-10327, 2019 WL 1437878, at *3 (N.D. Ill. Mar. 31, 2019). In that case, the plaintiff's proposed host site was denied because a parole agent made a mistake in calculating the site's distance from a park that hosted camps for children. *Id.* The plaintiff filed grievances in an effort to get the denial overturned, but he ultimately remained in custody for a full year after his MSR date. *Id.* Upon his release, the plaintiff filed suit, alleging the defendant's mistake violated his rights under the Eighth and Fourteenth Amendments. *Id.*

In determining whether the plaintiff could proceed under both Amendments, the *McGuire* court recited *Lewis*'s command that where a particular Amendment provides

constitutional protection against government behavior, that Amendment rather than substantive due process should be used to analyze the claim. *Id.* at *5 (quoting *Lewis*, 523 U.S. at 841). The court then concluded that because the "alleged wrong . . . did not result in the IDOC's failure to release Plaintiff, but instead resulted in him serving his MSR in prison rather than at his proposed host site, the Eighth Amendment's prohibition of cruel and unusual punishment provides 'an explicit textual source of constitutional protection . . . .'" *Id.* In other words, the defendant's mistake led the plaintiff to serve his parole in prison rather than a host site of his choosing, which could be viewed as cruel and unusual punishment— not "an imposition upon Plaintiff's broader right to liberty." *Id.* Thus, the court determined that it need not look to "the Fourteenth Amendment's amorphous guarantees of substantive due process." *Id.*

The Court also finds the Northern District of Illinois's reasoning in *Murphy v. Raoul* to be instructive. *Murphy v. Raoul*, 380 F. Supp. 3d 731 (N.D. Ill. 2019). There, indigent sex offenders who were subject to additional incarceration after their release dates because the IDOC could not find appropriate places for them to live on MSR filed a putative class action lawsuit against the Illinois Attorney General and the IDOC Director challenging the constitutionality of their indefinite detention. *Id.* at 738-39. On summary judgment, the court determined that the plaintiffs' substantive due process claim was duplicative of their Eighth Amendment claim. *Id.* at 753. The court observed that while it is uncertain which Amendment controls "hybrid forms of detention, . . . the Eighth Amendment standard . . . is at least as difficult for a plaintiff to satisfy as the Fourteenth Amendment standard." *Id.* (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 546 n.1 (7th Cir. 2017), *cert. denied*, 583 U.S. 1180 (2018)). Moreover, the court found, it is the Eighth Amendment that serves as the primary source of

substantive protection after conviction. *Id.* at 754. Thus, any protection provided by substantive due process is redundant of that provided by the Eighth Amendment. *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

This Court agrees with Defendants that Courtney's claim is most appropriately analyzed through the lens of the Eighth Amendment. Courtney makes the same allegations in his substantive due process claim as he does in his Eighth Amendment claim: that Defendants' deliberate indifference caused his release to be prolonged to a year after his scheduled MSR date. Like in *McGuire* and *Murphy*, the Court finds that the Eighth Amendment's prohibition against cruel and unusual punishment provides "an explicit textual source of constitutional protection" from the alleged wrong; thus, the Court need not evaluate Courtney's claims under the Fourteenth Amendment.

### III.   Eighth Amendment Deliberate Indifference

To demonstrate a violation of his Eighth Amendment rights, Courtney must produce evidence that he was detained in prison for longer than he should have been due to Defendants' deliberate indifference. *See Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016) ("Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference."); *see also Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015) (plaintiff on MSR stated an Eighth Amendment claim when he alleged he was "detained in jail for longer than he should have been due to the deliberate indifference of corrections officials"). "Prison officials may not act with deliberate indifference toward a known risk that a prisoner is being held beyond his term of incarceration without penological justification." *Whitfield v. Spiller*, 76 F.4th 698, 714 (7th Cir. 2023). "[D]eliberate indifference may be found where an official knows about

unconstitutional conduct and facilitates, approves, condones, or 'turn[s] a blind eye' to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Vance v. Peters*, 97 F.3d 987, 992–93 (7th Cir. 1996)).

The plaintiff also must establish that each defendant was "personally responsible for the deprivation of a constitutional right." *Whitfield*, 76 F.4th at 706 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). This means a plaintiff must demonstrate that the defendant, through his or her own conduct, violated the Constitution. *Perez*, 792 F.3d at 781. However, "personal responsibility is not limited to those who participate in the offending act." *Childress*, 787 F.3d at 439–40. Rather, "[l]iability extends to those who, having a duty under the Constitution to the plaintiff, act or fail to act with a deliberate or reckless disregard of plaintiff's constitutional rights." *Id.* at 440 (cleaned up). "The factors necessary to establish a § 1983 violation against a prison official depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id.*

Defendants argue that Courtney has failed to demonstrate they were personally responsible for the alleged deprivation of Courtney's constitutional rights, as required to succeed on a § 1983 claim. They assert there is no evidence that any Defendant evaluated or denied Courtney's proposed host site(s) or was responsible for approving halfway house in the State of Illinois. Furthermore, they argue, Courtney's claim that he sent letters to Defendants is insufficient to create a genuine issue of material fact, as there is no evidence that Defendants actually received and read the correspondence.

The Court disagrees. In *Perez*, the Court of Appeals explained that "an inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional

deprivation." *Id.* at 781-82. Once an official is alerted to a constitutional deprivation through a prisoner's correspondence, "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard." *Id.* at 782 (quoting *Vance*, 97 F.3d at 993). In this case, the evidence, viewed in the light most favorable to Courtney, establishes that he sent kites and filed grievances through the normal institutional channels alerting Godinez, Butler, and Lashbrook that his constitutional rights were being violated.[2]

With regard to Godinez, Courtney testified that he wrote letters to Godinez on October 4 and October 15, 2013, and mailed the letters to him. He then produced handwritten duplicates of those letter, which stated that he was being held hostage past his MSR date and that his constitutional rights were being violated. Although Godinez has no recollection of receiving, reviewing, or being informed of Courtney's letters, a jury crediting Courtney's testimony could find that Godinez received the letters and turned a blind eye to the deprivation of Courtney's constitutional rights.

With regard to Courtney's October 18, 2013 grievance, however, there is no evidence that Godinez ignored it. Godinez or his delegate concurred in the denial of the grievance based, at least in part, on the grievance officer's (inaccurate) statement that Courtney had been submitted for a halfway house. As a top-level administrator, Godinez is "entitled to relegate to prison staff . . . the primary responsibility for specific prison functions." *Figgs*, 829 F.3d at 903. It was not Godinez's responsibility to investigate whether Courtney had actually been submitted for a halfway house, and he was entitled to rely on the individual who had

---

[2] Courtney also presented testimony from Defendants' Rule 30(b)(6) designee for Menard that an offender can send kites to prison officials by either placing the message in their cell bars or in an institutional mailbox and that officials cannot ignore inmate correspondence. (Doc. 138-18 at p. 66).

that responsibility. *Id.* at 903-04. Contrary to his inaction with regard to the letters, Godinez exercised the authority of his office when he denied Courtney's October 2013 grievance.

As to Butler, Courtney sent two kites to her in October 2013, and another kite on April 15, 2014, stating that he was being held past his MSR date in violation of his constitutional rights. His April 15, 2014 kite, in particular, stated that he had written letters and grievances on the matter with no response from anyone. He also asked why non-sex offenders with "out dates" later than his were being sent to the sex offender halfway house.

As CAO at the time Courtney submitted his April 2014 kite, Butler was responsible for ensuring that Field Services assisted Courtney in developing a release plan, that the release plan was entered in OTS, and that it was updated as necessary. (*See* Doc. 138-1, Administrative Directive 04.50.110(II)(F)(1)). While the violation of a state law or policy does not "per se violate the Constitution, when those violations result in unjustified deprivations of liberty, the Constitution is implicated." *Courtney v. Butler*, 66 F.4th 1043, 1053 (7th Cir. 2023). And, "in a case like this where many officials may have played a role in causing or failing to remedy Courtney's prolonged imprisonment, state law or policy may help sort out questions of individual responsibility that can be so critical under § 1983." *Id.* Although Butler denies ever receiving, reviewing, or being informed of Courtney's kites, a reasonable jury could find Butler personally responsible for a violation of Courtney's Eighth Amendment rights when he sent communications to Butler regarding his continued wrongful incarceration, she received them, and she ignored them.[3]

---

[3] The Court notes that the Warden's 2014 Kite Log, which is redacted of all inmate names and numbers, contains an entry from April 18, 2014, stating: "needs to hear from Field Services re: parole site." (Doc. 132-17 at p. 8). While the timing of this entry indicates it could be Courtney's April 15, 2014 kite, the Log is redacted of inmate names and numbers so it is impossible for the Court to know who wrote it.

Finally, with regard to Lashbrook, Courtney testified that he sent a kite dated October 15, 2013, and one in March or April 2014 complaining that he was being held hostage after his "out date." (Doc. 132-3 at pp. 156-57). As with Godinez and Butler, a jury giving credit to Courtney's testimony could find that Lashbrook had knowledge that Courtney was being held past his MSR date without penological justification and turned a blind eye to his plight.

Defendants, through their answers to interrogatories, claim to have no knowledge of any of these communications, despite Courtney's testimony that he sent his kites and grievances through the normal institutional channels. The Court, however, must construe the evidence and all reasonable inferences in the light most favorable to Courtney. And in doing so, the Court finds there is, at the very least, a genuine question of material fact as to whether the Defendants were personally aware of Courtney's alleged unconstitutional incarceration past his MSR date and turned a blind eye to it in violation of the Eighth Amendment.

For these reasons, none of the Defendants are entitled to summary judgment on Courtney's Eighth Amendment deliberate indifference claim.

## IV.    Qualified Immunity

Lastly, Defendants assert they are entitled to qualified immunity.

"Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, 592 U.S. 7, 8 (2020); *see also Brown v. LaVoie*, No. 22-1585, 2024 WL 243493, at *6 (7th Cir. Jan. 25, 2024), *as amended* (Jan. 25, 2024) (*quoting Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")

(internal quotation marks omitted). "Whether qualified immunity applies turns on two questions: first, whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation." *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021). The law is "clearly established" when "various courts have agreed that certain conduct is a constitutional violation under facts not distinguishable in a fair way from the facts presented in the case at hand." *Vernon v. McGlone*, No. 22 C 4890, 2023 WL 3059154, at *5 (N.D. Ill. Apr. 24, 2023) (quoting *Figgs*, 829 F.3d at 905).

Here, the Court has determined that the facts, taken in a light most favorable to Courtney, present a violation of his Eighth Amendment rights. Thus, the only remaining question is whether the right at issue was clearly established at the time of the alleged violation.

Defendants argue that the law was not clearly established at the time of the alleged violation. Defendants point to cases such as *Armato v. Grounds*, which broadly held that no prisoner may be held beyond the term of his incarceration without penological justification, and *Brown v. Randle*, which broadly discussed the right of inmates who have lawful host sites to be released from prison. *See Armato*, 766 F.3d at 721; *Brown v. Randle*, 847 F.3d 861, 864 (7th Cir. 2017). Defendants argue that both of these cases are not particularized to the facts of this case, and in any event, they were decided *after* Courtney violated at the door in 2013. Defendants also claim *Brown* holds that "personnel who implement Illinois's program are entitled to qualified immunity because no federal court has held that the Illinois approach violates the Constitution, so they have not violated clearly established law." *See Hoffman v. Wilks*, 748 F. App'x 79, 80 (7th Cir. 2019) (citing *Brown*, 847 F.3d at 863-64). Defendants fail to

mention, however, that this holding was in the context of a Fourth Amendment claim, not an Eighth Amendment claim. *See Brown*, 847 F.3d at 864.

In response, Courtney cites to *Figgs* for the proposition that prison officials are not entitled to qualified immunity when they are deliberately indifferent to the possibility that an inmate was being held unlawfully past his release date.

Although *Figgs* was not decided until 2016, the Seventh Circuit held that "*[a]t the time Figgs presented his complaints*, it was clearly established by decisions in closely analogous cases that the failure to investigate a claim that an inmate is being held longer than the lawful term of his sentence violates the Eighth Amendment if it is the result of indifference." *Figgs*, 829 F.3d at 906 (emphasis added). Figgs filed his complaints in 2011, two years before Courtney first notified Defendants that he was being held unlawfully past his release date. Thus, the Court finds it was clearly established in 2013 that incarcerating a prisoner beyond the termination of his sentence without penological justification violates the Eighth Amendment if it is the product of deliberate indifference. *See also Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001) (incarcerating a prisoner beyond the termination of his sentence without penological justification violates the Eighth Amendment as cruel and unusual punishment if it is the product of deliberate indifference as opposed to an error of state law).

Because the facts alleged and established by Courtney describe a violation of a constitutional right that was clearly established at the time of the alleged violation, Defendants are not entitled to qualified immunity.

## CONCLUSION

For these reasons, the Motion for Summary Judgment (Doc. 131) is **GRANTED in part and DENIED in part**.

Summary judgment is **GRANTED** as to Defendant Richard Harrington, and he is **DISMISSED with prejudice**.

Summary judgment is **DENIED** as to Defendants Salvador Godinez, Kimberly Butler, and Jacqueline Lashbrook.

The Court will set a status conference by separate order to discuss the potential for mediation and a firm trial date.

**IT IS SO ORDERED.**

DATED:   **February 5, 2024**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**